```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :
AGUAS LENDERS RECOVERY GROUP, LLC,  :
                                    :
              Plaintiff,            :
                                    :
         -against-                  :         OPINION
                                    :      06 Civ. 7873 (RLC)
SUEZ S.A., SOCIEDAD GENERAL DE      :
AGUAS DE BARCELONA, S.A., AND AGUA  :
Y SANEAMIENTOS ARGENTINOS S.A.,     :
                                    :
              Defendants.           :
                                    :
------------------------------------X
```

APPEARANCES

PROSKAUER ROSE LLP
Attorneys for Plaintiff
1585 Broadway.
New York, NY 10036

        LOUIS M. SOLOMON
               Of Counsel


SIMPSON THACHER & BARTLETT LLP
Attorneys for Defendant
425 Lexington Avenue
New York, NY 10017

        JOHN J. KERR, JR.
               Of Counsel




ROBERT L. CARTER, District Judge

Currently before the court is Agua y Saneamientos Argentinos, S.A.'s (hereinafter "AySA"), motion to dismiss and motion to stay the lawsuit pursuant to the doctrine of <u>forum non conveniens</u> and Rule 12(b)(3), F.R. Civ. P.[1] For the reasons herein, the court grants defendant's motion to dismiss the lawsuit pursuant to <u>forum non conveniens</u>.

### BACKGROUND[2]

When deciding a motion to dismiss on the basis of improper venue, the "court must take all allegations in the complaint as true, unless contradicted by the defendants' affidavits. When an allegation is so challenged, a court may examine facts outside the complaint to determine whether venue is proper. The court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." <u>E.P.A. ex rel. McKeown v. Port Authority</u>, 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001)(Pauley, J.)(citations omitted). The relevant facts are as follows.

The government of Argentina decided to privatize the Buenos Aires water and sewer utility. It offered a thirty year concession to private companies to assume operation of the water and sewer system in Buenos Aires and its suburbs and to collect tariffs from customers. <u>See</u> Compl. ¶ 31. The Argentine government organized the international bidding process to grant

---

[1] The lawsuit was initially brought against Agua y Saneamientos Argentinos, S.A. (hereinafter "AySA"), Suez, S.A., and Sociedad General de Aguas de Barcelona, S.A. The latter two parties subsequently settled their disputes with the plaintiff.

[2] The following facts have been gathered by looking to the plaintiff's complaint. However, where appropriate, the court has also looked to the parties' motion papers, affidavits, and declarations, drawing all reasonable inferences and resolving factual conflicts in favor of the plaintiff.

2

the concession in 1992. Id. The winning consortium was composed of seven companies, which became Aguas's initial shareholders: two French companies, Suez S.A., and Compagnie Generale des Eaux S.A.; a Spanish company, Agbar; a British company, Anglican Water Plc; and three Argentine companies, Sociedad Comercial del Plata S.A., Meller S.A., and Banco de Galicia y Buenos Aires S.A. Aguas was formed by a public deed dated February 16, 1993. Aguas and Argentina entered into a concession agreement on April 28, 1993. On May 16, 1993, Aguas's incorporation was completed in Buenos Aires as a joint stock company with an initial corporate capital of $120,000,000. As a company incorporated under Argentine law with its registered seat in Buenos Aires, all business and corporate records are kept in Argentina.

The concession agreement provided that upon commencement of the concession, the Argentine government would permit Aguas to take possession of certain service assets, including treatment facilities, pipelines, commercial offices, and warehouses, for the purpose of fulfilling its obligations to provide water and sewage services.[3] Concession Agreement at 3.4 (Ex. 1). The concession agreement expressly stated that Aguas received no title to the service assets and would have no ownership rights.[4]

---

[3] In relevant part, the concession agreement states: "On the date of Taking Possession, the Concessionaire shall acquire the possession of all assets allocated to the service and the development of the complementary activies used by OSN. . . ." Concession Agreement at 3.4 (Ex. 1).

[4] The concession agreement indicates that title was not transferred to Aguas: "All the assets allocated both to the service and to the development of supplementary activities that were used by OSN, shall be transferred to the Concessionaire, *who shall have physical possession thereof but not title thereof*." Concession Agreement at 6.2.1 (Ex. 1)(emphasis added).

3

In early 2002, Argentina passed Law N°.25.561, Ley de Emergencia Publica y de Reforma del Regimen Cambiario of January 6, 2002, and additional regulations that abolished the United States dollar-Argentine peso parity and any tariff indexation. In the following three months, the Argentine peso depreciated in value by seventy percent. The January 6, 2002 law abolished the adjustment of public service tariffs to reflect the increased costs. The law also imposed mandatory renegotiation with the Argentine government, which resulted in four years of negotiations between Aguas and the Argentine government.

In 2004, Aguas restructured its debt with its creditors. This agreement is contained in two interim financial agreements, or "IFAs." The IFAs contain express agreements to the following: 1) the agreements are governed by New York law; 2) the agents for service of process would be located in New York; 3) legal action arising out of these agreements may be brought in the courts of New York; 4) the parties waived objections based on <u>forum</u> <u>non</u> <u>conveniens</u>; 5) the parties may freely and unconditionally transfer, assign, or otherwise dispose of their rights to another; 6) there is a provision for enforceability of a New York judgment; and 7) the parties may acquire a waiver of sovereign immunity. <u>See</u> Pl.'s Mem. Opp. Mot. to Dismiss, at 10-11.

On July 26, 2005, Aguas initiated a contractually-established procedure for the termination of the concession, claiming that the Argentine state was not fulfilling its obligations under the concession. <u>See</u> Decl. Iriberri ¶ 13.

4

Aguas's termination notice was rejected by the Argentine government on December 22, 2005.  Id.

Subsequently, Argentina issued Decree N° 303/06, terminating its concession with Aguas on March 21, 2006.  The government cited an alleged excess in the content of nitrates found in certain subterranean water sources located at the water sites as the cause of the termination.  Id. at ¶ 14.  On February 9, 2006, Aguas filed an action before the Argentine federal contentious administrative court N° 8 in Buenos Aires seeking a judicial confirmation that its termination notice was valid.  Id. at ¶ 17. It later amended this action to reflect the Argentine government's subsequent termination of the concession.  The issue at stake at this proceeding, which is still pending before the Argentine court system, is a determination of which of the two parties is liable for the termination of the concession and the amount of termination compensation to be paid to Aguas.  Id. at 18.

Following Aguas's termination from the concession, Argentina temporarily assumed operation of the sewage and water services that were provided by Aguas on March 21, 2006, the same day that Aguas's concession was terminated.[5]  Argentina soon after incorporated a new entity, AySA, for the sole purpose of providing water and sewage services in the city of Buenos Aires. The water and sewage public service concession was then assigned

---

[5] "[T]he Argentine National Government is temporarily taking possession of the facilities. . .in their current state, fully and without dispute. . .and is temporarily reassuming the operation and provision of the drinking water and sewage service."  AySA's Mem. In Supp. of Mot. to Dismiss, at 1; Acta de Toma de Posesion, dated Mar. 21, 2006, Ex. 17.

5

to AySA.  The Argentine government owns ninety percent of AySA's stock.  AySA's employees own the remaining ten percent of its stock pursuant to an employee stock ownership program, which is statutorily mandated in Argentina.  See Compl. ¶ 21.  AySA used the facilities and water lines that both Aguas and the Argentine government possessed while providing the sewage and water services to the Buenos Aires area.  Id. at ¶ 21.

After the concession was terminated by the Argentine government, Aguas filed for protection from its creditors on April 28, 2006.  See Decl. Iriberri ¶ 25.  The Aguas insolvency proceedings are currently pending before the commercial court N° 17 in Buenos Aires.  Id. at ¶ 27. Eleven unsecured lenders have filed claims against Aguas, in an aggregate principal amount of $123 million, arising out of the unsecured financial loans subject to this lawsuit.  Id. at ¶ 26. The eleven creditors completed their filings in the Argentine proceeding on or before September 21, 2006.  Id. at ¶ 27.

Plaintiff, Aguas Lenders Recover Group, LLC, ("ALRG"), is a New York limited liability company.  Its members are the original and successor parties to loans made to Aguas. See Pl.'s Mem. Opp. Mot. to Dismiss, at 5.  Plaintiff's members include entities organized under the laws of Delaware, Germany, the Cayman Islands, the British Virgin Islands, and the Bahamas.  Id.  On September 29, 2006, plaintiff's members assigned to it claims to unpaid amounts due and owing under financing agreements with Aguas.  The purpose of ALRG is to "collect and/or take action with respect to Claims, including, but not limited to, disposing

of, enforcing, voting, or otherwise dealing with or taking action with respect to, the Claims, including, without limitation, collecting, litigation, holding, selling, exchanging, settling litigation, or otherwise." Id. The assignment also authorized plaintiff "to continue to pursue" claims in Aguas's Argentine insolvency proceeding in the names of the individual members.

This lawsuit was initially brought against AySA, and two of Aguas's original shareholders, Suez and Sociedad General de Aguas de Barcelona, on September 29, 2006—the same date as plaintiff's incorporation and its assignment to the relevant claims. The latter two defendants in the lawsuit subsequently settled their disputes with the plaintiff on October 24, 2007, and the claims against those parties were terminated on the same date.

As for the remaining claims, plaintiff argues that defendant is the successor in interest to Aguas, and therefore liable to plaintiff for Aguas's contractual and tortious violations to it. Specifically, plaintiff alleges that defendant is liable for the following: 1) breach of the Aguas loan facilities and IFAs as the successor in interest to Aguas; and 2) fraudulent transfer of Aguas's assets to AySA. See Compl. ¶¶ 119-122, 144-152.

Plaintiff argues that AySA is the successor to Aguas because Aguas's "entire business and all of Aguas's tangible and intangible assets were transferred, wholesale, to AySA in 2006." See Pl.'s Mem. Opp. Mot. to Dismiss, at 7. Plaintiff alleges that by taking over Aguas's assets, AySA is the successor in interest to Aguas's liabilities, including the financing and loan agreements at issue. Plaintiff originally argued that the

defendants were bound to a New York forum because the two settled parties were signatories of the IFAs.  Further, plaintiff argued that New York is a convenient forum because both of those parties are located in Europe, and New York was a convenient midway point for all of the parties.

Defendant counters that the lawsuit should be dismissed pursuant to forum non conveniens because New York is an inappropriate forum for this lawsuit.  Defendant states that it is not a signatory to the IFAs that are the basis of plaintiff's argument that New York is a proper venue, noting that it did not even exist when the relevant financial agreements were created.

### DISCUSSION

The primary issue is whether New York is a proper venue for this lawsuit.  In a Rule 12(b)(3), F. R. Civ. P., motion to dismiss based on improper venue, the burden of showing that New York is the proper forum for this lawsuit falls on the plaintiff.  See E.P.A. ex rel. McKeown v. Port Authority, 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001)(Pauley, J.)(citations omitted).

Plaintiff argues that the court should not grant the motion to dismiss because the IFAs that were entered into between ALRG's members and Aguas contain waivers of all objections on the basis of forum non conveniens.  Plaintiff claims that defendant is bound by these waivers as Aguas's successor in interest.  Plaintiff argues that the court should apply the stricter forum non conveniens analysis required under M/S Bremen v. Zapata Off-Shore Co, 407 U.S. 12, 15 (holding that contractual forum

8

selection clauses will be enforced absent strong showing of "fraud, undue influence, or overweening bargaining power" with respect to the clause itself), rather than the traditional forum non conveniens analysis.

Neither plaintiff nor defendant are parties to the IFAs. See Whittaker Decl. Ex. 12 and 13. The Second Circuit has suggested that district courts need not afford great deference to waivers of forum non conveniens upon non-signatories, even where the non-signatory is an alleged successor to the waiver. See Yung v. Lee, 160 Fed. Appx. 37, 40 (2d Cir. 2005)("[W]e are not convinced by plaintiffs' argument that a forum selection clause must be accorded special weight against non-signatories to the agreements."). Here, both parties are non-signatories to the IFAs, making an even stronger case for the forum waivers' inapplicability in this matter. Plaintiff cannot hold defendant liable for the forum waivers, where defendant was not a party to the relevant agreements and did not even exist when the agreements were created. As such, plaintiff's argument that the parties have contracted to use New York as their chosen forum is meritless. Consequently, traditional forum non conveniens analysis is required.

Forum non conveniens determinations are "committed to the sound discretion of the trial court. . .[and] may be reversed only when there has been a clear abuse of discretion." See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 237 (1981); see also R. Maganlal & Co. v. M.G. Chemical Co., 942 F.2d 164, 167 (2d Cir.1991)("A district court has broad discretion in deciding

9

whether to dismiss an action on grounds of forum non conveniens."). "The 'central purpose' of forum non conveniens analysis is to determine whether a trial will be most convenient and will serve the interest of justice." Virgin Atlantic Airways Ltd. V. British Airways PLC, 872 F.Supp. 52, 61 (S.D.N.Y.1994)(Cedarbaum, J.). A court may dismiss an action on the basis of forum non conveniens even where it is a "permissible venue with proper jurisdiction over the claim." See Carey v. Bayerische Hypo-und Verinsbank A.G., 370 F.3d 234, 237 (2d Cir. 2004)(citations omitted). In fact, "A district court should dismiss a complaint where, on balance, the resolution of the matter in an adequate alternative forum would be more convenient for the parties and courts and more just." LaSala v. UBS, AG, 510 F. Supp. 2d 213, 221-22 (S.D.N.Y. 2007)(Haight, J.)(citing R. Maganlal & Co. v. M.G. Chem. Co., 942 F.2d 164, 167 (2d Cir. 1991)).

Courts in this circuit engage in a three-step analysis when determining whether a lawsuit should be dismissed on the basis on forum non conveniens. First, the court must assess whether there is an adequate alternative forum for the lawsuit. Second, the court must determine the degree of deference to afford to the plaintiff's choice of forum. Third, the court must weigh the private and public interests to determine which forum would best serve the interests of convenience and justice.

**A. Existence of an Adequate Alternative Forum**

The first inquiry in the forum non conveniens analysis is whether there is an adequate alternative forum for this lawsuit. The United States Supreme Court has held that this requirement is usually satisfied when the defendant is "amenable to process" in the alternative forum. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n. 22 (1981). Specifically, the Second Circuit has formulated a two-part test to determine whether there is an adequate alternative forum: "An alternative forum is adequate if: (1) the defendants are subject to service of process there; and (2) the forum permits 'litigation of the subject matter of the dispute.'" See Alfadda v. Fenn, 159 F.3d 41, 45 (2d Cir. 1998)(citing Piper Aircraft, 454 U.S. at 254 n. 22); see also Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 75 (2d Cir. 2003).

Under Argentine law, defendants are subject to service of process if the tort occurred in Argentina. See Cabanellas Decl. ¶¶ 49, 51-52. Here, the alleged tort, fraudulent transfer, took place in Argentina. Therefore, an Argentine court could assert jurisdiction over that cause of action. In a contract lawsuit, an Argentine court could assert jurisdiction over a defendant where the contract was to be performed in Argentina or the defendant is domiciled in Argentina. See Cabanellas Decl. ¶¶ 42, 50. Here, defendant is a corporation that is domiciled in Argentina and ninety percent owned by Argentina. Clearly, defendant would be subject to process in Argentina. As such, defendant would be subject to process for both causes of action in Argentina, satisfying the first prong of the two-part test.

The next inquiry is whether an Argentine court would permit litigation on the subject matter of this litigation and would provide adequate remedies for the causes of action. Argentine courts provide adequate causes of action and remedies to address the claims in the complaint. See id. at ¶¶ 55, 58; see also Warter, 380 F. Supp. 2d at 1309 ("Each of Plaintiff's claims, fraud, negligent misrepresentation,. . .conspiracy to commit fraud and breach of fiduciary duty, is available under Argentine law."). Argentine law provides a cause of action for the contract action and adequate remedies for the alleged breach of contract. See Cabanellas Decl. ¶¶ 55 ("Under Argentine law, a plaintiff allegedly harmed by the violation of non-performance of contractual obligations may bring an action on such violation or non-performance. The plaintiff may request specific performance. . . or damages."). There is also a cause of action for the subject matter of the fraudulent transfer claim. See id. at 62 ("A fraud action may be brought, even as against a bankrupt debtor and its accomplices, under articles 961 to 972 of the Civil Code. . . ."). Argentine courts also provide remedies for the tort claim. See id. at ¶ 65 ("With regard to tort claims, the plaintiff may request remedies for the injuries caused by the tort (Civil Code, art. 1077)."). Consequently, the courts in Argentina satisfy both prongs of the two-part test, and constitute an adequate alternative forum for this lawsuit.

**B. Level of Deference Granted to Plaintiff's Choice of Forum**

The next question in the forum non conveniens analysis is the level of deference to be given to plaintiff's choice of forum. In the Second Circuit, the "degree of deference to be given to a plaintiff's choice of forum moves on a sliding scale depending on several relevant considerations." See Iragorri v. United Techs. Corp., 274 F.3d 65, 71 (2d Cir. 2001)(en banc). These considerations include "the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice," which encompasses "convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district." LaSala v. UBS, AG, 510 F. Supp. 2d 213, 223(S.D.N.Y. 2007)(Haight, J.)(citing Iragorri, 274 F.3d at 72).

Less deference is given to a plaintiff's choice of forum when it is motivated by tactical advantage. See Lasala, 510 F. Supp. at 223. Here, the complaint provides no ties to the United States other than plaintiff's place of incorporation and the location of plaintiff's attorneys. ALRG was incorporated in New York on the same day that this lawsuit was initiated. Plaintiff appears to hold no assets other than the claims at issue in this case. Its members are primarily foreign entities, and its sole connection to New York occurred on the same day that this lawsuit was initiated at its incorporation. Plaintiff's members include entities organized under the law of Delaware, the Cayman Islands, the British Virgin Islands, and the Bahamas. Plaintiff does not appear to have substantial ties to New York, and plaintiff's choice of forum seems to be motivated by tactical advantage for

this reason.  Moreover, the availability of witnesses in this forum is less than in an Argentine court, and plaintiff appears to have insignificant ties to the United States.  <u>See</u> Discussion C.1. <u>infra</u>.

Furthermore, even if plaintiff did have substantial connections to this forum, the Second Circuit has acknowledged that deference is diminished where "plaintiff is a corporation doing business abroad and can expect to litigate in foreign courts."  <u>See</u> <u>Guidi v. Inter-Continental Hotels Corp.</u>, 224 F.3d 142, 147 (2d Cir. 2000).  The underlying conduct for all of the causes of action that have been brought in this case occurred in Argentina, defendant is an Argentine entity, and plaintiff is comprised of foreign entities and has little business in New York outside of its incorporation on the very day that this lawsuit was initiated.  These facts weigh in favor of an Argentine forum.  A plaintiff's choice of forum is "given reduced emphasis where. . .the operative facts upon which the litigation is brought bear little material connection to the chosen forum."  <u>Nieves v. Am Airlines</u>, 700 F. Supp. 769, 772 (S.D.N.Y. 1988)(Leisure, J.).  Plaintiff is not only primarily comprised of foreign entities, it is suing on claims that occurred in Argentina.  It would not be "reasonable for plaintiff to believe that defendants would be more amenable to suit in New York than anywhere else."  <u>State Street Bank & Trust v. Inverions Errazuriz Limitada</u>, 230 F. Supp. 2d 313, 320 (S.D.N.Y. 2002)(Carter, J.).  For all of the foregoing reasons, the court has accorded little deference to plaintiff's decision to bring this lawsuit in New York.

## C. Consideration of the Private and Public Factors

The third step in the court's <u>forum non conveniens</u> analysis is the weighing of the private and public factors to determine which forum best serves the interests of convenience and justice.

### 1. Private Factors

The private interests that a district court must consider when making a determination about <u>forum non conveniens</u> are as follows: "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." <u>See</u> <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 508 (1947).

Plaintiff has alleged that Aguas's assets were fraudulently transferred to defendant. <u>See</u> Compl. ¶¶ 143-152. "Where alleged misconduct is centered in the foreign forum and the majority of evidence resides there, dismissal is favored." <u>Lasala v. Bank of Cyprus Public Co. Ltd.</u>, 510 F. Supp. 2d 246, 258 (S.D.N.Y. 2007)(Haight, J.). In the instant matter, most of the relevant witnesses and evidence are located in Argentina. <u>See</u> Def.'s Mem. Supp. Mot. to Dismiss, at 41. One of the most important entities regarding plaintiff's allegations, Aguas, is a non-party that is found only in Argentina. <u>See</u> <u>id.</u> at 43. A multitude of the non-party witnesses are found in Argentina. <u>See</u> <u>id.</u> at 64-69; <u>see also</u> Suez's Mem. Supp. Mot. to Dismiss 31-35. Specifically,

numerous Argentine government officials, court appointed representatives, and Aguas's former officers and employees—all of whom live and work in Argentina—will be necessary to evaluate plaintiff's allegations regarding Aguas's termination of Aguas's concession, and defendant's possession of its assets.  These critical non-party fact witnesses are beyond the reach of the court's compulsory process.

The costs of obtaining the attendance of willing and unwilling witness in New York would be substantially larger than the costs of having the trial in Argentina. "[W]here, due to the fact that the majority of evidence must be procured from a foreign country, a substantial cost if passed on to a defendant in order to put on its case, a district court may weigh this fact in favor of dismissal." Strategic Value Master Fund, Ltd. V. Cargill Fin. Servs. Corp., 421 F. Supp. 2d 741, 768 n.22 (S.D.N.Y. 2006)(Leisure, J.).  The vast majority of evidence and witnesses are located in Argentina, and the tremendous expense associated with transporting these individuals to New York weighs in favor of an Argentine forum for this action. The fact that the parties could be required to resort to the Hague Convention and letters rogatory to secure a portion of relevant testimony and documents does not obviate the hardships with having New York instead of Argentina as a forum for this lawsuit.  Live testimony is always preferred to documentary testimony.  This is the type of inconvenience that forum non conveniens was intended to prevent.

Furthermore, much of the documentary evidence is kept in Argentina. "The official company file of Aguas is kept in the Spanish language at the Superintendency of Companies and Association in Buenos Aires. . . ." See Irbierri ¶ 5. The need to obtain, transport, and then translate a multitude of these documents from Spanish language to English is a private interest that strongly favors dismissal.

Moreover, plaintiff has failed to identify documents or witnesses located within this district. Defendant has listed numerous key witnesses who are located in Argentina. Plaintiff has failed to identify any witnesses or entities that are key to this lawsuit that are located in the United States other than itself and its attorneys. Plaintiff's failure to identify any witness (other than itself) that might be found within this district weighs in favor of an Argentine forum.

In sum, the private factors overwhelming indicate that Argentina is the most appropriate forum for this lawsuit.

**2. Public Factors**

The public factors that a district court must consider when making a determination about forum non conveniens are as follows: "(1) having local disputes settled locally; (2) avoiding problems of applying foreign law; and (3) avoiding burdening jurors with cases that have no impact on their community." Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC, 155 F.3d 603, 609 (2d Cir. 1998).

In the instant matter, Argentina has a far greater local interest than New York in the alleged fraudulent transfer of

assets by Argentina in favor of a corporation that is primarily owned by Argentina. As plaintiff points out, the court is aware of New York's importance as a world financial capital. However, this fact is not adequate to trump Argentina's interests in adjudicating a dispute that involves an entity owned largely by its government, involving witnesses located within its boundaries, and conduct that took place within its jurisdiction.

A "tangential connection" to New York does not alone form a basis for denial of a <u>forum</u> <u>non</u> <u>conveniens</u> dismissal. <u>See</u> <u>First Union Nat'l Bank v. Paribas</u>, 135 F. Supp. 2d 443, 453 (S.D.N.Y. 2001), <u>aff'd</u>, 48 Fed. Appx. 801 (2d Cir. 2002). Plaintiff's tort claim against defendant concerns an alleged fraudulent transfer of assets made in Argentina for the provision of water and sewage services to Argentine citizens, and transferred by one Argentine company to another Argentine company, pursuant to a decree of the Argentine government. <u>See</u> Compl. ¶¶ 30-34, 143-52. Plaintiff's contract claims concerns loan agreements that were made to finance the provision of these water and sewage services, and stems from an alleged breach of that contract that occurred in Argentina. <u>See</u> Compl. ¶ 1. These allegations are precisely the types of local issues that should be decided by an Argentine court.

Furthermore, because the concession is governed by Argentine law, the court would likely have to interpret Argentine law to decide several of the relevant issues. The need to apply

Argentine law in this case weighs in favor of dismissal. See Gilstrap v. Radianz Ltd., 443 F. Supp. 2d 474, 491 (S.D.N.Y. 2006), aff'd., 2007 WL 1541362 (2d Cir. 2007). Finally, this dispute would be burdensome for jurors because it is a lawsuit that would have no impact on their communities. They would be forced to determine what is essentially an Argentine lawsuit. As such, the public factors indicate that dismissal on the basis of forum non conveniens is appropriate.

The court rejects plaintiff's contention that additional discovery should be conducted before determining the issue of forum non conveniens. The factors so overwhelming favor an Argentine forum, that additional discovery is not required.

**CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss the complaint on the basis of forum non conveniens, pursuant to Rule 12(b)(3), F.R. Civ. P., is granted.

**IT IS SO ORDERED**

DATED:  New York, New York
        March 3, 2008

*[signature: Robert L. Carter]*

**ROBERT L. CARTER**
**U.S.D.J.**